UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| PRESIDENT CASINOS, INC., | ) | Case No. 02-53005-659 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | **PUBLISHED** |

## O R D E R

The matter before the Court is Creditor Alma Jackson's Motion for Relief from Order Pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure as to the Order Relating to Post Petition Personal Injury Claims Identified in Omnibus Objection Dated May 30, 2007 (hereinafter "Creditor's Motion for Relief from Order") and Response to Creditor Alma Jackson's Motion For Relief 9024 of the Federal Rules of Bankruptcy Procedure as to the Order Relating to Post Petition Personal Injury Claims Identified in Omnibus Objection Dated May 30, 2007 (hereinafter "Response"). Upon consideration of the record as whole, the Court makes the following FINDINGS OF FACTS:

On June 20, 2002, President Casinos, Inc. (hereinafter "PCI") and President Riverboat Casino-Missouri, Inc. (hereinafter "PRC-MO") (hereinafter collectively the "Debtors") filed voluntary petitions for reorganization under Chapter 11. Debtors continued to operate and manage its business and financial affairs as debtors in possession. Alma Jackson (hereinafter "Creditor") sustained a personal injury resulting in knee surgery from a fall on PRC-MO's entrance.

Creditor, through her attorney, filed a timely Claim (hereinafter "the Jackson Claim"). On March 22, 2007, PCI as Trustee for PRC-MO Distribution Trust (hereinafter the "Distribution Trustee") filed its First Omnibus Objection to Administrative (Post-Petition) Claims Filed against PRC-MO (hereinafter the "Omnibus Objection"). The objection sought to disallow, reduce, or refer to mediation, various claims listed in Schedule F.

The Jackson Claim was among those claims objected to pursuant to the Omnibus Objection. The Distribution Trustee sought to refer the Jackson Claim to mandatory mediation.  On April 30, 2007, this Court entered its Order on the Omnibus Objection (hereinafter the "Omnibus Order") referring the Jackson Claim to mediation and directing Creditor to submit a Mediation Statement no later than May 7, 2007.

Creditor failed to submit her Mediation Statement on or before May 7, 2007.  On May 30, 2007, this Court entered its Order Relating to Post-Petition Personal Injury Claims Identified in the Omnibus Objection (hereinafter the "PI Claims Order").  Pursuant to the PI Claims Order, the Jackson Claim was disallowed in its entirety for Creditor's failure to file her Mediation Statement.

Creditor's Mediation Statement was hand delivered to the Mediator's office on June 4, 2007. On June 8, 2007, Creditor filed Motion to Reconsider Court Order of May 30, 2007 (hereinafter "Motion to Reconsider").  Creditor stated in the Motion to Reconsider that Creditor's counsel failed to file the Mediation Statement due to an oversight caused by counsel's emergency appendectomy. Creditor further requested that this Court reconsider disallowance of Creditor's claim on her counsel's failure to timely submit Mediation Statement.

The Distribution Trustee filed its Response  to Creditor's Motion to Reconsider on June 18, 2007. On July 10, 2007, this Court entered its Order denying the Motion to Reconsider.  On August 29, 2007, Creditor filed Creditor's Motion for Relief from Order.  On September 14, 2007, the Distribution Trustee filed its Response to Creditor's Motion for Relief from Order.

Creditor argues that counsel's failure to timely file the Mediation Statement amounts to excusable neglect due to an emergency appendectomy.  Moreover, Creditor argues that this Court is permitted to accept late filing for inadvertence, mistake or carelessness.  Creditor further argues that there is no requirement that the circumstances surrounding a failure to timely file the Mediation Statement must be beyond the party's control.  Creditor argues that there is no danger of prejudice to Debtors, because the length of delay due to the late filing is minimal and no distributions of

2

Debtors' bankruptcy estate have been made.

The Distribution Trustee argues that Creditor failed to show that counsel's emergency appendectomy prevented timely filing of the Mediation Statement because there is no proof that counsel was ill during the entire crucial period.  Thus, the Distribution Trustee argues that Creditor's "excusable neglect" argument fails.  The Distribution Trustee further argues that Creditor's Motion for Relief from Order is an attempt to recreate or bolster an old argument instead of offering additional or different grounds for relief.

## JURISDICTION AND VENUE

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334 (2007) and Local Rule 81-9.01 (B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (B) (2007).  Venue is proper in this District under 28 U.S.C. §1409(a) (2007).

## CONCLUSIONS OF LAW

Pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, Rule 60 of the Federal Rules of Civil Procedure applies to cases under the Bankruptcy Code.  Under Rule 60, on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable neglect.  FED. R. CIV. P. 60(b)(1) (2007).

The issue here is whether failure of Creditor's counsel to timely file Creditor's Mediation Statement amounts to excusable neglect.  "A determination of excusable neglect involves a two-part analysis: first, the bankruptcy court must determine that the failure to timely file was the result of neglect. Second, the court must determine whether the neglect was excusable". *In re John Schultz*, 254 B.R. 149, 153 (B.A.P. 6th Cir. 2000).

"The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter or …'to leave undone or unattended to *esp[ecially] through carelessness*.'" *Id.* citing *Pioneer Inv. Servs. Co.*

*v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L. Ed. 2d 74 (U.S. 1993)

(quoting Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis in original)).  Here, this

Court ordered Creditor to submit a Mediation Statement no later than May 7, 2007.  Creditor failed

to submit the Mediation Statement on or before May 7, 2007.  Creditor's inaction during this time

period demonstrates neglect.

"The determination as to whether neglect is excusable is an equitable one, taking into

account all relevant circumstances surrounding the party's omission." *In re Payless Cashways, Inc.,*

230 B.R. 120, 138 (B.A.P. 8th Cir.) citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,

507 U.S. 380, 395, 113 S.Ct. 1489, 123 L. Ed. 2d 74 (U.S. 1993) (Creditors failed to file proofs of

claim within 20 days after being told by their counsel that no bar date had been set and there was

no urgency in filing proofs of claim).

*Pioneer* factors set out for consideration of whether neglect is excusable are:

> (1) the danger of prejudice to the debtor; (2) the length
> of delay and its potential impact on judicial proceed-
> ings; (3) the reason for the delay, including whether it
> was within the reasonable control of the movant; and
> (4) whether the movant acted in good faith.  *Id.*

The *Pioneer* Court held that the neglect of counsel was excusable due to the "peculiar and

inconspicuous placement of the bar date in a notice regarding creditors' meeting." *Pioneer,* 507 U.S.

at 398, 113 S.Ct. at 1500.  *Pioneer* discussed the fact that there was no prominent announcement

of the bar date, nor was there an explanation of its significance.  *Id.*  Here, this Court entered its

Order on the Omnibus Objection referring Creditor to mediation and directing Creditor to file a

Mediation Statement no later than May 7, 2007.  Unlike *Pioneer*, notice of the filing deadline was

clear.

The first factor to consider is prejudice to Debtors.  The Distribution Trustee requested that

Creditor's claim be handled through mediation.  If Creditor's Motion for Relief from Order is granted,

Creditor would have the opportunity to mediate the claim.   Moreover, Debtors' estate has yet to

make distributions to any of the personal injury claimants.  Thus, Debtors would be in the same position Debtors anticipated after the Distribution Trustee requested that Creditor's claim be sent through mediation.  Therefore, no danger of prejudice to Debtors exists.

The second factor to consider is the length of delay and its impact on judicial proceedings. On May 30, 2007, this Court entered its original Order disallowing Creditor's claim.  In response, on June 8, 2007, Creditor filed a Motion to Reconsider Court Order of May 30, 2007.  Then, on July 10, 2007, this Court entered its Order denying the Motion to Reconsider.  Subsequently, on August 29, 2007, Creditor filed this Motion for Relief from Order.

Creditor's Motion for Relief from Order was filed less than ninety (90) days from entry of the PI Claims Order disallowing the Jackson Claim .  Thus, the length of delay caused by Creditor's failure to file the Mediation Statement is minimal.  In Creditor's Motion for Relief from Order, Creditor maintains that delay in filing the Mediation Statement was due to counsel's emergency appendec-tomy.

Further, Creditor asserts that counsel practices in a small firm with two partners, where he is solely responsible for his own files.  While Creditor offered more insight into counsel's practice situation, Creditor has put forth no new arguments or new evidence to support a different finding than was rendered the last time this matter came before the Court.  The Court in *Payless Cashways* denied Amtech's motion due to Amtech's failure to argue and prove its point at an earlier stage. *Payless Cashways,* 230 B.R. at 127.

The Court in *Payless Cashways* held that "reconsidering the order posed a danger of prejudice to Payless and would substantially impact judicial economy because the court had already heard the evidence and decided the matter once."  *Id.*  As stated above, here, there is no danger of prejudice because mediation of this claim was anticipated and preferred by Debtors.  However, to allow Creditor to prevail by making essentially the same argument and offering no new grounds for an alternative decision would have a negative impact on judicial economy.

5

When presenting to the court, a movant should always put forth all relevant arguments and facts to assist the court in reaching a conclusion.  Consequently, it would be inherently unfair to the non-moving party to give the moving party a second try, where the moving party's argument in its appeal for relief from the order is not a novel one.  Therefore, the negative impact on judicial economy weighs against the finding of excusable neglect.

The reason for the delay is the third and most important factor to consider.  *In re Gehl,* 324 B.R. 756, 759 (Bankr. N.D. Iowa 2005) citing *Gibbons v. U.S.*, 317 F.3d 852, 854 (8th Cir. 2003). The cause of the neglect does not have to be due to circumstances beyond the party's control.  The court is more concerned with the nature of the neglect.  *Id.* citing *Lowry v. McDonnell Douglas Corp.*, 211 F.3d  457, 463 (8th Cir. 2000).

Creditor asserts that illness of counsel precipitated by an emergency appendectomy was the reason for the delay in filing Creditor's Mediation Statement.  Although illness of counsel may be sufficient for a finding of excusable neglect, the illness must be of "such character and magnitude that counsel was both physically and mentally incapacitated during the crucial period of time." *Id.* at 760 citing *Gibbons*, 317 F.3d at 855.  Here, Creditor was given forty-five (45) days from the date the Omnibus Objection was issued to file the Mediation Statement.

Although Creditor's counsel encountered an emergency appendectomy within this period, Creditor has not shown that counsel was both mentally and physically incapacitated during the entire 45-day period.  "The fact that counsel became ill does not excuse the period of time when he was not ill." *Id.* citing *Gibbsons*, 317 F. 3d at 855.

The *Gibbons* Court stated that failure of counsel to establish a system to keep counsel abreast of case-related matters during counsel's absence showed "a serious lack of diligence and inattention to everyday detail of the practice of law." *Gibbons v. U.S.* 317 F.3d. 852, 855 (8th Cir. 2003*)* citing *Marsh v. Richardson,* 873 F.2d. 129, 131 (6th Cir. 1989).  Here, counsel should have had systems in place to prevent his oversight of the filing date.  While excusable neglect does not require a reason

6

outside the control of the moving party, whether circumstances are in its control is still a relevant factor. *Pioneer,* 507 U.S. at 391, 113 S.Ct. at 1496. Therefore, Creditor's reason for failure to timely file Mediation Statement weighs against a finding of excusable neglect.

The final factor to be considered is whether Creditor acted in good faith. Bad faith generally means dishonesty of belief or purpose. BLACK'S LAW DICTIONARY 134 (7TH ED. 1999). In this case, a finding of "dishonesty of purpose" would mean that Creditor willfully rendered an imperfect performance. Here, Creditor's late submission of the Mediation Statement on June 4, 2007 may be considered imperfect because it was delayed past the submission date. However, there is no indication that Creditor's actions were willful. Thus, Creditor acted in good faith.

This Court finds that the facts above do not support a finding of excusable neglect. Therefore,

**IT IS ORDERED THAT** Creditor's Motion for Relief from Order is DENIED.


_____
KATHY A. SURRATT-STATES
United States Bankruptcy Judge


DATED:  July 3, 2008
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Kathleen E. Sailer
Thompson Coburn LLP
One US Bank Plaza
St. Louis MO 63101

Mark Bossi
Thompson Coburn LLP
One US Bank Plaza
St. Louis MO 63101

Michael L. McGlynn
116 S. Charles St
Belleville, IL 62220

Robert E. Eggmann
231 S. Bemiston, Ste 1220
St Louis, MO 63105